The records at issue in this case are aggregate change of address data, high-level summaries of moves around the country. This is essentially a few columns in a spreadsheet, old zip code or county and state on the one hand, new zip code or county or state on the other hand, and the summaries of how many people are moving from one to the other. The Postal Service has cited Title 39, Section 410C2 to deny access to this government data. That is a narrow FOIA exemption for information of commercial nature. Okay, so can you tell me what you can't get through the population mobility trend today? I'm sorry, Your Honor. The population mobility trends, which is still free and publicly available. What can you not get that you want? So Your Honor, a couple points on that. The population mobility trends is not free. That's the commercial product that the Postal Service is attempting to sell. So none of that data is available. What can you get through publicly available channels? The stuff that is free, and what is the difference between what you're looking for and what you can get? So as of now, I believe there's no publicly available change of address data that the Postal Service makes available. They used to publish for a short period of time after they stopped providing access to data under FOIA. They were publishing a different kind of summary. It was basically just where were people, like how many change of address requests were there in total, but there wasn't to and from data. So you weren't able to see people moved from ZIP Code A to ZIP Code B. But as of now, as of the reply brief, we understand that the Postal Service does not intend to publish any change of address data, period. And so the only access to this information is through FOIA. But I think maybe the question, so they're not publishing anything, but prior to the development of the product, which took two years from the first rejection of the FOIA, from the first use of the exemption that we no longer have to provide this under FOIA, and now you could either subscribe to this service, which is what, anywhere from 90 plus thousand to 300,000 to get this data. The question is what can, I know no FOIA requests are being provided, but what's the versus what your client received when there were responses to FOIA? Because it's my understanding that even under the commercial product, you don't get the same data, correct? That's correct, Your Honor. Okay. What's the difference? Sure. So there are, I think about 125 fields that are available through the commercial product. A very narrow portion of that overlaps with what my clients have requested, which is again, the summary to from data for different zip codes or counties and states. There is also, however, a whole bevy of information that is not even available through the commercial product because it only provides access to the top three to from zip codes in various formulations. So I think within county, within state, and then out of state. So essentially the smaller migratory shifts that my clients would have previously had access to under FOIA are now no longer available at all. Even if you licensed this product. Okay, well you would agree that FOIA doesn't require them to produce records that they don't ordinarily keep, right? Even assuming that we weren't dealing with this commercial nature exception. That's correct, Your Honor. And that FOIA does not require an agency to create new records or compile things. But if it has the information, then it is subject to the requirements of FOIA. Right, but not in the format that you are asking for. FOIA does require an agency to provide access to records in a format. If this information no longer exists in any form, then yes, I don't think the Postal Service would be required to provide it under FOIA. But I do believe the information exists. It's just partially in the commercial product and then it's partially, I don't know, I believe in their back file somewhere. What is the value of this information in terms of transparency of the citizenry keeping track of what the government is up to? So a couple points on that, Your Honor. I mean, first and foremost, it is reflective of what the government is tracking about Americans. You know, what does the government know? The government collects all kinds of information. Well, we know exactly what the government is tracking. Everybody's change of address form. And it's tracking it for the purpose of making sure the mail gets forwarded. It doesn't track, if you decide to move and leave your mail behind and not file a change of address form, at least maybe the CIA or the NSA is watching you. But as far as I know, the Postal Service is not. Right. So what do we learn about how the government works from this information as opposed to what information your clients want to get for free that they are then going to sell to the public for a price? So a few things, Your Honor. I think it would show, for example, there are all kinds of non-commercial information that we might find use of with this. So, for example, we might want to know where's the government targeting certain programs? Where's the government apportioning resources? And do those match up with or not? That's not what the Post Office is doing. I mean, what resources are you talking about? You're talking about other government programs are targeted especially to South Carolina. But South Carolina, it turns out, is losing population. So you can then criticize the government for putting too much resources into South Carolina. Is that the idea? I think that might be a valid use of the information. What does it have to do with the Post Office, though? Well, the Post Office is just the entity that collects it. It's kind of like... You see, I mean, the Post Office, and I guess this is what this case is about, is now, whether one likes it or regrets it, a kind of hybrid business and government function. And I guess what I'm trying to figure out is that FOIA exists for the purpose of letting the citizens keep tabs on the government. And here, the information that you're keeping tabs on is the public. Because you're going to see where people are moving. But I don't know what... I can see a lot of value in this information. Some of it is valuable because businesses might want to know things like this. And that's why they're able to sell it to some people, just like... I mean, Bloomberg doesn't give its news away for free, I take it, right? I think it... Well, the products are kind of pricey, in fact. Wall Street Journal is not so expensive, but they're also behind a paywall. And they also have to pay money to the... If you're an old guy who likes to read the newspaper, you have to pay money to somebody to get that, right? I think it's helpful, Yaron, to think of it as analogous to census data, actually, which is a really important governmental function. It's very similar to census data in terms of how are people moving around the country? What effect does that have on voting? What effect does that have on, again, different types of government programs? Judge Lynch is not disputing the value of the data. He's asking how knowing that data allows you to evaluate how the government is performing for taxpayers. And how the Post Office in particular is performing. What does it have to do with that? I mean, there's another kind of argument, although I've not seen the courts use that as a rationale for FOIA, that your tax dollars are going to collect certain information. And so any member of the public should have a right to get anything that the government has acquired through the use of taxpayer resources. But I haven't found that in case law. It's talking about that's why we have FOIA. Your Honor, I see my time is up. May I answer that? No, no. Your time is our time. So we'll keep you as long as we need you. We've got a whole list of questions. Okay. Your Honor, I think the legal question here is maybe what is an agency record? What are the types of records that are subject to FOIA? And there's a Supreme Court case called Tax Analysts that basically says that information that is in the government's possession is rightly subject to FOIA. So whatever, it doesn't really matter whether this helps you to keep tabs on the agency. If it's information that the government has, it's subject to FOIA, period. Subject to exceptions. That's right, Your Honor. Except that the problem is that this exception is geared specifically to the post office as a commercial entity. That's what this, that's why, if this was some other agency, this exception would not exist, right? That's true, Your Honor. The FOIA exception is just whatever any statute provides and that incorporates, everyone agrees, this particular exception. But this particular exception is unique to the post office. That's right, Your Honor. But the government has not contended, and I don't think it would be right to say that these are not agency records. It's just that the government contends that there's an exception that applies. That's right. So when you, oh no, please. I was going to say, can you hammer in on what you think the definition of commercial that we should adopt is and how you think the information of a commercial nature and the Reorganization Act and FOIA's more general exemption number four play out? Absolutely, Your Honor. So I think the first thing to note is that it's not just commercial information, it's information of a commercial nature. And I think that wording is crucial because it distinguishes this exemption 410c2 from, among other things, FOIA exemption 4, which just talks about commercial information. So the parties have gone back and forth at length about the import of the word nature. From our perspective, it's incredibly important that we have to give effect to Congress's inclusion of that word because it signals something different than exemption 4. Well, but what does it signal is the problem. I mean, you would agree that this, just as they didn't say commercial information, they did not say information that is commercial by its nature. I think that's right, Your Honor. So what they said was of a commercial type, of a commercial sort. Well, and that's why I'm asking for a definition. We're going to have to put something on paper. Yes. So what would you wish that definition be? So I think that the definitions from the Ninth Circuit in Carlson v. United States Postal Service or the definition from National Western Life Insurance was a district court case from Texas. Both of those look at the inherent nature. So in Carlson, it has to be commercial in the first instance. And in National Western, it has to be intrinsically economic or financial information. And I think both of them. Can you give me some examples of that? So I think the best examples of this, and this is from cases that both parties cite, are contract terms are a great example of this. So prices, rates, quantities, that type of information. So you see that in Wickwire-Gavin, which is the Fourth Circuit case, for example. There were key terms in contracts negotiated between Hallmark and the Postal Service about buying mailing supplies. How much are the mailing supplies going to cost? How many mailing things are you going to buy? That type of thing. I'm just wondering if you're asking too much in the first instance of Carlson. That wasn't necessary for its holding because they were vaguely making some reference to a website and pushing traffic there. So if that's dicta, how does Carlson help you? I mean, first, I guess, would you agree that it's dicta and that it's not necessary to its holding? I think it is, but I think the Court necessarily rejected the Postal Service's arguments. Well, it didn't necessarily because the actual holding of the case is that the locations of post offices is not, and it obviously is not, information that ordinary businesses would want to keep secret, right? There's no business that I'm aware of that is open to the public that hides where you can go to buy its products. I agree with that, Your Honor. Although I think in Carlson, the Court was only addressing what we've called the first prong of Exemption 410c2. The entire discussion in the case is about whether the information is open to the public. Yeah, you know, sometimes judges go nuts, right? I mean, they talk about a lot of things that they don't actually need to talk about to resolve a very simple case. It seems to me Carlson is a super simple case. And it's a little hard for me to say we should feel ourselves really worried about being consistent with a Ninth Circuit case talking about a subject that was utterly irrelevant to resolving the case before. Well, and for me specifically, that was the definition that you offered. And we're not persuaded, or at least we might not be persuaded. Can you offer, can you make us more comfortable with the definition? What I think we're all interested in and hoping to hear from you is, well, why should we adopt that definition? And the answer is not because the Ninth Circuit said so. The answer is because it is a better understanding of what Congress meant because. So I think it's important to look at the first prong in conjunction with the second prong, which is information that is not, you know, ordinarily disclosed under good business practices. And you look at that in conjunction with the mention of trade secrets, for example, in the first prong. And I think that gives you a good indication of the type of information that Congress was concerned about. Of all the, you know, types of commercial information that may exist in the world, trade secrets is kind of an anchor, right? That is, you know, inherently commercial information that companies don't disclose. But the Postal Service here is disclosing. Obviously, it means more than that, or they could have just said trade secrets. Right, so we know that however we define it, trade secrets is on one side of the line. Yes. But we still need a definition. Yeah, so I do think that contract terms, again, is a good example of information that is of a commercial nature, but is not a trade secret, but still would qualify for the statute. I think also if you look at, for example, American Postal Workers Union versus United States Postal Service, there you had salary and bonus decisions from the Postal Service vis-a-vis employees. That's kind of like buying and selling labor, you know? But I think it has to relate to the buying and selling of goods in the first instance. That's what the plain language of the— I'm intrigued by your statement that you have to take this together with things that businesses do not ordinarily disclose, or at least do not disclose for free. I mean, would I be—if I add those words for free, is that an illegitimate expansion of what Congress said, or must it be information that businesses do not disclose, period, full stop, end of story? I think it needs to be read—well, that's a good example, Your Honor. And I think if you look, for example, at the companies that we've pointed to in our brief, Allied, Zillow, LinkedIn, all of these, they are disclosing this data for free. Yeah, but they're very different, right? I mean, Allied—I don't think Allied could sell the information that they give away for free, because I'm having trouble understanding how it would be very useful. It doesn't—unlike the post office, it's a much narrower data set. So it's kind of interesting and cute to go to the website and see where do people use Allied to move from New York to. But it wouldn't tell you very much about where New Yorkers are moving, because I assume that people use, like, Moshe or some other, like, local service if they're moving from Manhattan to the Bronx, and they use Allied if they're moving to L.A. So it gives a kind of distorted picture. The postal service information is, it seems to me, potentially very valuable. I mean, what—see, again, when you're talking about linking commercial nature to things businesses don't disclose, what immediately occurred to me reading this is, you know, we—these briefs—we live in an information society where information about consumers is the primary business model of lots of organizations that the public interacts with. You know, I interact with the postal service to get my mail. I interact with Google to find information on the internet. Google sells to advertisers what I search for. The postal service wants to sell commercially the information that they acquire in the course of doing their business of moving mail. Why are—why is not Google the appropriate analogy rather than Allied? Well, Your Honor, I think we point to something that's actually quite similar to that, which is Meta or Facebook. They also track location data, and they provided it to researchers who are doing things like my clients do. But they're not subject to the Postal Reorganization Act, which Congress specifically said was under some obligation to make some money. And so how do we—I find those— I mean, to me, a more analogous example would be something like Amtrak or something where they've got both a public mission, but Congress has said, you know, you need to have some sort of business model whereby you're able to be at least somewhat self-sustaining. So I think Your Honor's point is very well taken. I think part of the difficulty here is that exemption for 10c2, it's not a profit-maximizing— A hundred percent. It's not a profit-maximizing. It's a—when we are reorganizing the postal service, we're taking it from a department of the United States government into a semi-public, semi-private, you know, kind of new hybrid entity. There are certain things that the postal service is going to have to do. It's going to have to negotiate, for example, contracts with third parties. And we don't want to inhibit its ability to do that. So does the Defense Department. That doesn't distinguish the postal service in any way from every other government agency that procures labor and goods. I think there are some differences, Your Honor, because when the postal service was being reorganized, it was being taken out of control of Congress, right? It's like Congress was like, we don't want to do this anymore. We want the postal service to set its own rates. We want it to, you know, do its own thing, have the Postmaster General be, you know, a separate entity. And so I don't think the analogy is quite right. No, exactly. That's the point you see. They made the post office different from the Defense Department. But it seems to me you can't come back then and say, well, what's different about them is they have to negotiate contracts because every government agency that is subject to FOIA Plano, that is not profit making, that is not subject to the Postal Reorganization Act, all of them have to do the things that you just said the post office now has to do. The post office had to do those things when it was a government agency. So in the Postal Reorganization Act and in subsequent statutory changes, Congress very clearly defined what it wanted the post office to do. It gave it specific, you know, types of powers. It did not say go out and do whatever you can under any circumstances to make money. So for example, in 2021, in the, there was an amendment to give the Postal Service more power to do new types of things, for example, enter into contracts with state, local and tribal governments. And getting to that issue of specifically the implementation of PRA and the regulations, do they provide us, to what extent do the regulations provide us an answer to whether this particular type COA information is of a commercial nature? So when I look at 35 CFR 265.14, there are A through F factors that the regulations provide should be reviewed in assessing whether information is of a commercial nature. And then also 265.14B3, little I, provides a list of, a long list of the types of factors, examples of what weighs in favor or not of concluding that the change of address information is of commercial nature. And can you give us your assessment of that? I mean, I reviewed the factors. You know, does it relate to products or services, which was one you mentioned earlier in your argument. How do those, A, B, C, D, E, and F, relate to or answer the question of whether, in other words, do we need to come up with an answer of what is of a commercial nature or do we take it on a fact-by-fact or case-by-case basis, looking at the information and determining whether Congress and the implementing regulations make this of a commercial nature? So the answer to that, Your Honor, is that this Court, under A. Michael Piano, only looks at the statute itself, its plain language and its legislative history. Does not look to implementing regulations. There are different circuits that might look at regulations implementing an Exemption 3 statute, but this Court only looks at the statute itself. So the regulations that the Postal Service has promulgated are not relevant to the question. Even if they would be helpful to your argument, that COA is not a... Yeah, I was wondering, I was waiting to hear the part that says, you don't look at that, but if you did, we still win. But I'm not hearing that part of the Supreme Court lawyer's argument. I think we would, Your Honor, but I think there's no room for that under this Court's precedent. But I appreciate Your Honor's suggestion. So thank you. We will hear from you on rebuttal. You've got two minutes. Ms. Onizawa, am I getting it right? Yes. Okay, thank you. May I ask for you to start with the question that I asked your colleague about how we should define commercial? Certainly. So plaintiffs here contend that information of a commercial nature has to be inherently commercial or intrinsically economic. And plaintiffs, as we submitted in our briefs, they rely on one definition of nature that defines the term as the essential character or constitution. In other words, the essence of something, like the nature of the controversy or the but as we pointed out, there's another definition of nature that makes more sense and is more relevant to this context. A kind or sort or a class that is characterized, that is marked by fundamental characteristics, like documents of a confidential nature, questions of a legal nature, questions of a factual nature. So here we submit that the natural reading of information of a commercial nature would be information of a commercial kind or sort or class. And so the change of address data clearly has a direct relationship to commerce or commercial. It is itself the product of commercial transactions, which the district court properly defined as relating to or connected with trade and traffic or commerce in general, the business of buying and selling for money or the buying or selling of goods. And there is no question here that the data, the change of address data that the Postal Service has chosen to commoditize. But does that change when you have a quasi-public private entity? Does that definition change? In other words, when it is the business of the Postal Service, not only as an entity that's supposed to be making profit, but as a government entity that is the only entity that collects data about people's movement, does that change? So I just want to make sure I'm understanding Your Honor's question correctly. Is Your Honor asking whether the definition of information of a commercial nature would change as it would apply to another federal agency? When you apply the definition to an agency such as the Postal Service, which has a quasi role, right, prior to making it a profitable, also a profitable entity. So I'm curious if that impacts how we apply that definition. I don't... In other words, is there any other... I mean, this is a government entity also getting information about the citizens or people who live in this country or reside in this country, their movement. And that data is used, you would agree, in many ways by both private and public entities to make assessments, determinations of not just resources, but also obviously profitability where people move their businesses to follow the trends, population trends. Does it make a difference here that we have a government entity that in essence is the only entity that collects this data for purposes of what if you have a university that is conducting studies that may be very important for social good? Does that mean they have to purchase a $300,000 product in order to get this information? So the short answer to that question is yes, it would, like any other paying subscriber. But I think we have to look at this in the context of the Postal Reorganization Act and its legislative purpose, which again was in Congress's express recognition that the Postal Service was a different kind of agency. So let me ask you a different question. If the PMT product had not been developed, the United States Postal Service would have no basis for asserting that the COA data is information of a commercial nature, correct? I mean, they didn't do it before. When there were freedom of information requests, you provided the information. In fact, more than is even available publicly. So my question is, but for creating this product, you wouldn't be claiming this exemption, correct? That is correct. To the extent the data is not being sold commercially and is not information of a commercial nature that under normal business practice would not be publicly disclosed pursuant to your honors example, I don't think we would have a basis to assert Exemption 3 over that data. Again, assuming it's not being offered. I'm a little surprised to hear you say that because that makes the definition seem relatively circular. It's commercial information is anything that somebody could sell for a profit. How would we even determine that? That would be, I mean, because it is a question to some degree of what is the nature of the an appropriate mechanism to monetize it. We haven't found the market yet. But then it's not commercial information until you do have the market for it. So let's say taking your honors example, if someone in the Postal Service today dreamed up a business plan to sell proprietary Postal Service data, we would submit that that kind of amorphous abstract idea would not transform the data into information of a commercial nature. But the record here shows that this wasn't just a pie in the sky abstract business idea. This was two years of product development that the agency's director of business services Right, but you withheld it during those two years before it actually came to fruition. And I suppose there was always the chance that it would go bust along the way, right? Sure, there's always a chance, but that's not what happened. Well, so I'm trying to figure out now. So if that's the line, how is a court ever to enforce that line? If the line is between an amorphous notion that maybe we could find a way to profit from this information, somewhere on the line from that leading to now we have something that you can buy for a mere $170,000 a year, where do we cross from the amorphous to the realized? I think it would have to be a case by case determination. But I would have thought you were going to put more weight on the second half and say, well, this is commercial because almost anything is commercial that any business does. They sell the stamp. You buy the stamp. In return for buying the stamp, you get your mail to come to me. And it's the post office's job to get it to me, whether I'm living at the address that you wrote on it or at a different address that I filed a change of address form. That's my business that I'm in if I'm the post office. And anything that has to do with that is kind of commercial. But then the real question I had thought in this was, is this stuff that people normally keep, the business would normally be expected to keep secret, keep close to the chest? And that may turn on whether it's something that they could make a profit on if they keep it close to the vest. If they give it away for free, they're giving away valuable stuff for free. So I think the answer to that is we have, I think, in the record below, provided examples of businesses that are in the same competitive location data space that do not give away location data. Yeah, I understand that argument. But what I'm having trouble with is it seems to me that your definition of commercial, if this is not commercial data because it has to do with the business of moving mail, but it's commercial data because we can sell it, I understand why it might be kept secret because we can sell it. But if it's only commercial, not because of how we got it or what role it plays in our and also difficult to administer. Well, there are two prongs to the test, right? So the first one is, does it relate to the buying and selling of commerce, among other dictionary definitions that were accepted by the district court? The second prong is, it's not enough to just have that product be within the stream of commerce. There has to be a showing, and the agency met that here, that businesses would not normally disclose that for free. So what about the information that you are not selling? Because as I understand it, I'm not sure exactly how this works, but what I could buy if I were rich and curious was a subscription to data that would show me for every zip code the top three places that people are going out of that zip code. Top nine, but yes. Top nine, okay. But numbers 10 through 50 are not available, and you are withholding those also, but you are not selling them. So that data remains totally unaccessible to the public. Why? So I would have to go outside the record to explain why, but it was a business decision made by- Maybe to avoid problems with going outside the record, I'm not so interested in the why of why exactly did they make that decision, but why should we say that that information can be withheld if your whole definition of what is commercial is stuff we can sell, but this is not stuff that you apparently believe you can sell, or at least you're not selling it. Because if FOIA permitted FOIA requesters to obtain wholesale data files of all population movement trends from any zip code in the United States to every other zip code in the United States, it would undermine the value of this commercial product, and we have established again that companies in the business of selling location data don't give away for free entire data files of the broad sort that plaintiffs were seeking here below. But the problem is you did give it away for free, and you gave it away for free for a long time until you realized, hey, we could make money off at least part of the information. And I think that's what I'm struggling with this case, is your definition of it's a commercial nature, it's that piece that we think we could sell for money, but not the other piece that maybe there may be very legitimate entities, universities, non-profits that want to get this information to study population trends, to gather data that is very necessary that only the government collects. You know, not everyone uses some of the public services, but everyone has to change their address with the post office when they move. I guess I'm struggling because in response to my first question, you said, yeah, it's because we can sell it. And so now we have the exemption. You're basing it on value. But in Carlson, a case that you tried to distinguish, didn't the court explicitly conclude that classifying the information as commercial because it has value is too broad of a definition for commercial, and then went on to say that the information has to be of a commercial nature in the first instance. So to define it based on the value is, as Judge Lynch pointed out, circular, isn't it? I mean, how can we rely on that definition? Because what's to keep the post office from saying something else they didn't sell previously is now valuable, and you can't get it? So this goes back to the Postal Service's unique role in the federal government. It's not just a federal agency. It's also a business. The statute recognized that. And we're not talking about abstract ideas, undeveloped ideas to maybe sell something in the future. This was an actual product that under two years went through a very concrete product development process, and as of last year, is being sold. So I understand in the past, the Postal Service made a decision to release FOIA data in response to FOIA requests and also to post it on its website. It has since, as it can, as a business, a revenue generating business, can make the decision, and it did make a concrete decision here to sell the change of address data for commercial value. That's the difference here. In Carlson, the Postal Service was making an argument that business hours and addresses and things that are already in the public domain for free was information of a commercial nature because that free information was leading customers to a Postal Service website, which then was selling goods and services for a price. But this data, as it stands now, is the subject of something that is being bought and sold. But this data was not available. You couldn't buy it off a website. This isn't a service being offered that you can go on the Postal Service and buy stamps or buy a scale or buy service. This is something that was internally kept records that were subject to and provided by the Post Office under FOIA. And I understand there may be costs, and you can charge those costs of providing that data. But this is something that was being provided for a long time. And then all of a sudden, hey, we can make money off at least some of this information. And I'm troubled that you don't provide all of the information that you used to provide, even if you were to pay for the service. And the reason, again, is because the Postal Reorganization Act is a withholding statute that applies to the Postal Service in recognition of its dual role as both a federal agency that is statutorily required to provide mail services and a business that is not taxpayer funded in large part to fund the massive mail operations. And Congress recognized that to do that, the Postal Service has the discretion to generate ideas about new ways of generating revenue. That's what it's supposed to do, according to Congress, is to come up with new ways of making money. And this is one. And the fact that they used to not be able to do that, that was then. This is now. Now we're in an information economy where this is valuable information that previously was kind of believed to be of no value to anybody but a bunch of sociologists, essentially. But now it's something that people will pay for. It does have, well, the Postal Service has ascertained that it has commercial value for developers and real estate. So I want to ask about timing. Does it matter that you didn't have it yet when it received these FOIA requests? In other words, that it wasn't already sellable? They couldn't have plopped down all the money to get this information? They put the FOIA, I mean, that was then, this is now argument that they had. It wasn't really now, right, when they first put it in. So what is the legal significance of it? Because the PMT product, as it was envisioned back when the FOIA requests were submitted, it contemplated a 12-month and a 48-month subscription. So under the 48-month subscription, a look back of four years, it would have encompassed or did encompass the data, the time periods of the data being sought. So what would be the limiting factor for someone to, for us to not be worried that someone would deny a FOIA request because 10 years, 15 years, 20 years down the line they may imagine a way to monetize it? How do we write a limiting principle? I think it would need to be based on an agency declarant making reasonably detailed explanations as to why a particular set of data, a particular request being sought is part of a contemplated, an actual developing commercial data product and or is being actually sold on the market. So you're saying that it's not as hard as I was envisioning earlier because it's a fact question that we might deal with, of course might deal with in other contexts with what must people, what must companies disclose to the, when they issue securities about what the future holds and what kind of products they may be developing or something like that. We would be asking, trying to draw that kind of line somewhere between nebulous, fuzzy, who knows maybe someday we'll have a use for this and we've got it for sale. Somewhere along there you cross a line that there's a factual inquiry. Is this really a thing? Is this really a project that they're working on? Is that the idea? I think that, I think it's hard to draw a hard and bright line around any number of postal service information or data cases. Well, but the test that you're proposing is a non-nebulous project exists to develop a way to monetize this information. It's not just, it's information and so who knows what we could do with it someday. It's we are working on this. Is that the idea? Under the circumstances of this case, that certainly applies for the two years during which the agency withheld the data. Let me, if I can follow up. So Judge Pettis was asking you about sort of limitations and following up on that question and drawing on the hypothetical that Judge Lynch gave you. What if a new FOIA request came in, not asking for what's available on the PMT, we don't want the top nine change of address locations, we want the bottom seven or eight. Is your position still, even though that information is not available, if I buy a subscription to the PMT program, is your position that that's still not FOIA-able or provided under FOIA because the PMT exists, even though I can't get that information off the PMT? Yes. The answer is that it would be withholdable under Exemption 3 because I think, you know, as a preliminary, if the agency were to just disclose certain types of change of address data that may or may not fall within the population mobility trends product, it leads to a slippery slope where almost any FOIA request could be crafted to skirt around the. So if I'm, let's say a university, well endowed, and I buy the subscription to PMT and I want to get information about, I want to do a study on population trends for whatever reason, and it could be a very good social reason, and I buy the service and I say, well, I'm only getting half the data. You know, I know where some of these people went, but I don't know where the others went. And now I go to the Postal Service, the only source, public entity for this information, and the response is too bad? You can't get it? Is that what you're telling me? That is correct. That Exemption 3 and the Postal Reorganization Act, which applies specifically to postal service, would apply to protect the postal service's commercial interests. And is that because that's a decision by your agency? This doesn't preclude this Court from saying you can't rely on an exemption for a commercial product that you're not providing for profit, at least part of it. But Exemption 3 and the Postal Reorganization Act supplies that authorization to withhold. And the question here is whether the information is of a commercial nature that businesses wouldn't ordinarily disclose for free. That is the question. And we submit that this change of address data that is being sold commercially falls within that. Now, I understand that this... And I understand saying, look, we can't give you this for free anymore because it's valuable, we sell it now. But if you're not selling it, okay, if you're not selling a part of it, you're basically saying we are no longer accountable as an agency under FOIA to provide this information. Even though you've made an internal business decision that that information, as I understood, if I understood your answer correctly to Judge Lynch, well, that information is not profitable to sell on this PMT product. So even though you've made that decision to only offer half the information, it is now no longer available to anyone else under FOIA, even though you're a government agency. That is correct. Because giving away any portion of the data file for free under FOIA would undermine the value of a commercial product that the Postal Service has created and has implemented in order to generate revenue for itself. But the answer, I think, might be to Judge Kahn's question, is it's not that you all determined that it wasn't profitable. It's that there are different ways to extrapolate to get the same information. So giving away 7 through 10 allows the statisticians to be able to say the big stories that 1 through 3 would share, right? You're saying undercut in an abstract way like we get to control it and it would be slippery sloping our ability to be able to draw a line, but it actually can be reconstituted to develop a competing product for free, I think is what the better answer is. Is that right? That is also correct, Your Honor. Our position is that disclosing any portion of this massive data file that tracks population movements to and from every zip code in the United States, giving away any portion of that for free under FOIA would undermine the value of a commercial product that is selling a subset of that information. But I guess I'm struggling to find out how an entity can extrapolate data because what's available doesn't tell you can't from what's not available. You can't from what's available determine where the towns where less than 10 people moved went to. You know other people moved. You know people moved in other areas to a lesser degree, I mean I'd have to be a magician to figure that out, I would think. So I'm trying to struggle with how providing that under FOIA undermines the value because I don't know that you can extrapolate, that you can determine precisely where people went when you're only selling information about towns, as I understood it unless I misread it, that only towns where a certain number of people moved are you providing the information. In areas where less people moved in a particular state, you're not providing that data. So I'm getting half a picture, I'm not sure how I can fill in the full picture if I have one or the other. And so I'm still troubled by that response, that there's value, I get that there's value in this lower data and I get that maybe the PMT model was too expensive to develop to add all the data or to offer it that way. That's, you know, that's a commercial decision I made, do I sell this cup in three colors or five? But that doesn't mean that if I buy three colors, I know that you're also producing them in three other colors and I can guess what those colors are. Do you see what I mean? I don't understand how, that may have been an internal decision about what's profitable to keep on your database, but that doesn't mean that someone can get that data from half a data. I'm struggling to, are you saying that Bloomberg can buy your service and then extrapolate where people went from the data that's not available on that service? Are you representing that to the court? I'm not representing to the court that the data can be extrapolated and it's hard to answer the question without seeing FOIA requests on a case-by-case basis, but as a general matter, if the state change of interest data would be open to everybody under FOIA, notwithstanding the cost and the resources and the time spent developing this commercial product, it would undercut the value of the product. So let me take an example. No, I understand that. You can't make something you're selling available for free. I get that. What I'm talking about is something you're not selling, making that available so somebody has the full picture. And I understood you to be responding that, yeah, well, if you have half the data or the more important trends, you can figure out the others. And I'm not so sure that's accurate. And perhaps your opponents who requested the data can elucidate on that, on rebuttal. But I'm not so sure that that's correct. And I'm trying to ask you to confirm and represent as the postal representative whether that's accurate, that someone could determine from your commercial product that data that you're not providing on that product and that you're not producing under FOIA. It's difficult to respond, I believe, in the abstract. I think, though, what our focus is on is, again, releasing data for free under FOIA. Even if it's the larger universe of what the PMT is offering, that would completely undercut the value of the PMT, for sure. The for free interests me. You've used it several times, and I used it myself. And it was sort of my instinct that we should read the exemption as if it read. Which under good business practice would not be publicly disclosed for free. Meaning, I guess I'm getting that from the word publicly. Because even if I'm just trying to figure out, you know, the example of trade secrets is something that you don't give away, but you might sell. I mean, you have something that's a secret that gives it value. And so your business process, how you make the Coca-Cola or whatever, is the trade secret. If somebody paid enough money for the formula, maybe they'd be effectively buying Coca-Cola, the company. But at that point, you're prepared to disclose it for a fee. So is that the idea that publicly disclosed has to mean just gaily spoken about in the press, issued in a press release, put on a website for free access? That is based on the case law interpreting that second provision. That's our understanding, that public disclosure would mean public disclosure. Public dissemination. Correct. Okay. Are we good? Okay. Thank you so much. Mr. Marshall, we've got two minutes. Thank you, Your Honors. I will try to be brief. I want to point to one example of, I think what illustrates many of the problems with the government's test. The government's test is, if we want to try to sell it, then it is exempt under the statute. But consider, for example, a situation where the Postal Service decides that the calendar entries of the Postmaster General are valuable. And in fact, they could sell them to lobbyists. Under the government's theory of this exemption, all the Postmaster General's calendar entries would then be exempt under FOIA. And that could be true of anything. It could be true of the Postmaster General's ethics disclosures forms. It could be true of any record that the Postal Service has. And that can't be the test, because then it becomes just a tautological test. I think if you look at, in particular, the wording of Exemption 3, which is how this is brought into FOIA, it says it has to refer to particular types of materials or particular criteria. And if the test is just, whatever we want to sell is exempt, it doesn't, the statute no longer becomes a proper Exemption 3 statute, which is why you have to narrowly cabin the exemption here. Yeah, that's why I was surprised that they went there. I would have thought that this is arguably commercial information because it's part of the process of buying and selling the service of delivering mail, which they have to do. It's partly their public obligation to do it, but under the Postal Reorganization Act, they have to do it in a way that doesn't lose too much money. But it is their commerce. It's their commercial thing that they do. Is they sell you the stamp, and then they promise in return to deliver the mail, including to a changed address. So why isn't that commercial information? And then the fight has to be about, is this stuff that would be publicly, would be kept. The Postmaster General's calendar, or the Postmaster General's financial disclosures are not commercial in that sense, in a way that the change of address forms are. I think they might be, Your Honor. If they concern... I'm sorry, Your Honor. I see my time is up. May I answer? Yes, of course, you can finish. Okay. I think, for example, if it's what businesses is the Postmaster General invested in, I think that is commercial information, for example. And so I think that might fall within the scope of it. But again, I can't think that'd be the, that can't be the test. Thank you so much.